ORDERED.

Dated: March 30, 2020

*Jerry A. Funk*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

JEFFREY T. PETTY,

    Debtor.
_____/

JEFFREY T. PETTY,

    Plaintiff,

v.

BBVA USA f/k/a BBVA COMPASS BANK,

    Defendant.
_____/

Chapter 13
Case No.    3:19-bk-0326-JAF

Adv. Pro. No. 3:19-ap-0060-JAF

**ORDER DENYING BBVA COMPASS'S MOTION FOR SUMMARY JUDGMENT**

This proceeding is before the Court on the Motion for Summary Judgment filed by Defendant BBVA USA f/k/a BBVA COMPASS BANK ("BBVA Compass"). (Doc. 21). Plaintiff JEFFREY T. PETTY ("Debtor") filed a response in opposition. (Doc. 26). BBVA Compass filed a reply. (Doc. 30). For the reasons set forth herein, the Court denies BBVA Compass's motion.

*Background*

In January 2019, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Debtor's Chapter 13 plan was confirmed in May 2019. In April 2019, Debtor filed this adversary proceeding seeking to invalidate a mortgage lien held by BBVA Compass on certain real property located in Duval County, Florida (the "Property"). The complaint alleges that BBVA Compass "has forgiven the debt" secured by the subject mortgage "but has failed to release the mortgage." (Doc. 1, ¶ 4). BBVA Compass's motion contends there is no legal basis or evidence to support Debtor's claim that BBVA Compass forgave the underlying debt or waived Debtor's obligations under the loan agreement. (Doc. 21).

*Undisputed Facts*

In July 2006, Debtor executed a promissory note in favor of BBVA Compass (then known as Compass Bank) in the amount of $81,000.00 (the "Promissory Note"). (Doc. 22 at 5). The debt was secured by the mortgage lien that is the subject of this action (the "Mortgage"). (Doc. 22 at 9). Debtor eventually defaulted under the terms of the Promissory Note and has not made a payment since April 2013.

For tax-year 2017, BBVA Compass filed an "information return" Form 1099-C, with the Internal Revenue Service ("IRS"), to report the cancellation of the debt owed by Debtor. Importantly, the "identifiable event code" listed in Box 6 of the form is "G," which corresponds to 26 C.F.R. § 1.6050P-1(b)(2)(i)(G). This event code demonstrates that BBVA Compass filed this form because the following "identifiable event" occurred: "A discharge of indebtedness pursuant to a decision by the creditor [ ] to discontinue collection activity and discharge debt." See 26 C.F.R. § 1.6050P-1(b)(2)(i)(G).

The form states that the identifiable event occurred on October 18, 2017, as reflected in Box 1 of the form. (Doc. 22 at 57). The amount discharged by BBVA Compass, according to Box 2 of the form, was $73,948.98. Debtor did not pay income tax on the amount discharged due to tax relief provided by the Mortgage Forgiveness Debt Relief Act applicable at that time.

BBVA Compass contends that the filing and issuance of the Form 1099-C, standing alone, does not demonstrate that BBVA Compass forgave the debt or waived Debtor's contractual obligations under the Promissory Note. BBVA Compass contends that, instead, the issuance of the Form 1099-C occurred because BBVA Compass faced a $48,000 loss if it had attempted to foreclose and force a judicial sale of the Property. (Doc. 30 at 1). BBVA Compass contends that it made a business decision to "temporarily stop actively collecting" on the delinquent loan and issued the Form 1099-C to avoid fines from the IRS.

*Analysis*

Summary judgment is appropriate if the pleadings and discovery show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The movant bears the initial burden of demonstrating the absence of a triable issue. In re Delco Oil, Inc., 599 F.3d 1255, 1257 (11th Cir. 2010). Once the movant meets the initial burden, the burden of production shifts to the nonmovant to produce evidence, beyond its pleadings, demonstrating that a triable fact-question exists. Id. The court must draw all evidentiary inferences in favor of the nonmovant. Id.

BBVA Compass's argument presents two questions of law: 1) whether BBVA Compass's filing of the Form 1099-C, standing alone, operates to extinguish Debtor's obligations under the Promissory Note as a matter of law; and, if not, 2) whether the Form 1099-C constitutes prima

facie evidence that BBVA Compass waived or intended to waive Debtor's obligations under the Promissory Note.

"The Internal Revenue Service requires a creditor to file a 1099C form if it has forgiven at least $600 in principal." Heredia v. Capital Mgmt. Services, L.P., 942 F.3d 811, 816 (7th Cir. 2019); Cavoto v. Hayes, 634 F.3d 921, 923 (7th Cir. 2011) ("Under the Internal Revenue Code, financial entities that discharge indebtedness of $600 or more must file a Form 1099-C, a type of 'information return' which identifies the amount of the debt and the person whose debt has been discharged."). This reporting requirement is provided in 26 U.S.C. § 6050P (2017).

The statute's implementing regulation, found at 26 C.F.R. § 1.6050P-1(a), provides: "Except as provided in paragraph (d)[1] of this section, any applicable entity [ ] that discharges an indebtedness of any person [ ] of at least $600 during a calendar year must file an information return on Form 1099-C with the Internal Revenue Service." 26 C.F.R. § 1.6050P-1(a)(1) (2017). For purposes of this mandatory reporting requirement, "a discharge of indebtedness is deemed to have occurred, except as provided in paragraph (b)(3) of this section, *if and only if* there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred." 26 C.F.R. § 1.6050P-1(a)(1) (2017) (emphasis added). The exception in paragraph (b)(3) provides for permissive reporting if the "discharge of indebtedness occurs before the date on which an identifiable event occurs[.]" 26 C.F.R. § 1.6050P-1(b)(3) (2017).

Relevant to this proceeding, an "identifiable event" includes: "(G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity *and discharge debt*." 26 C.F.R. § 1.6050P-1(b)(2)(i)(G)

---

[1] The exception in paragraph (d) does not apply in this proceeding. 26 C.F.R. § 1.6050P-1(d) (2017).

4

(emphasis added). "For purposes of the identifiable event described in paragraph (b)(2)(i)(G) of this section, a creditor's defined policy includes both a written policy of the creditor and the creditor's established business practice." 26 C.F.R. § 1.6050P-1(b)(2)(iii). "Thus, for example, a creditor's established practice to discontinue collection activity and abandon debts upon expiration of a particular non-payment period is considered a defined policy for purposes of paragraph (b)(2)(i)(G) of this section." Id.

Here, it is quite clear that BBVA Compass's filing of the Form 1099-C does not operate, as a matter of law, to extinguish Debtor's obligations under the Promissory Note because state law determines whether and to what extent Debtor's obligations were waived or otherwise extinguished. It is axiomatic that a mere reporting requirement, imposed by federal income-tax law, will not operate to extinguish contractual obligations governed by state law. Therefore, the Court agrees with BBVA Compass that the filing and issuance of the Form 1099-C, standing alone, does not extinguish Debtor's obligations under the Promissory Note. Debtor must prove the necessary facts showing that his obligations were waived or otherwise extinguished, under applicable state law.

On that point, this Form 1099-C constitutes sufficient evidence of BBVA Compass's intent to waive or discharge the debt because issuing the form with event code "G" is only required if BBVA Compass made the decision to "to discontinue collection activity *and discharge debt*." 26 C.F.R. § 1.6050P-1(b)(2)(i)(G) (2017). BBVA Compass contends that if it had not filed the form, it would have faced fines from the IRS for failing to do so. However, at this summary-judgment stage, it remains unclear why BBVA Compass would have a duty to file this form if it had not actually decided to discharge the debt.

BBVA Compass cites F.D.I.C. v. Cashion, which held that a Form 1099-C does not constitute sufficient evidence of intent to cancel a debt. 720 F.3d 169, 179 (4th Cir. 2013). The Cashion court reasoned that, under plain language of the regulation, "a creditor may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated." Id. at 178. BBVA Compass's argument, however, fails to recognize that, at the time Cashion was decided, there were eight identifiable events listed in § 1.6050P-1(b)(2)(i). At the time of this identifiable event on October 18, 2017, there were only seven.

Cashion's premise was based on identifiable event "H," formerly found at 26 C.F.R. § 1.6050P-1(b)(2)(i)(H). This identifiable event occurs when "the borrower has made no payment during the preceding 36 months, regardless of whether there has been an actual discharge." Zions First National Bank v. Crapo, 394 P.3d 338, 339 (Utah 2017). Put differently, a "Form 1099-C that specifies that it was sent to report an event code H therefore says nothing about whether there has been an actual discharge." Id.; see also White v. Capital One, N.A., 2017 WL 11237563, at *2 (D. Ariz. Sept. 29, 2017) (holding that a Form 1099-C containing identifiable event code "H" is not sufficient to allege that the creditor intended to waive the debt).

In November 2016, the Department of the Treasury (the "Department") and IRS promulgated an administrative rule change deleting identifiable event "H." The "final regulation" adopting this rule change provides in part:

> In response to the comments received, [ ] a notice of proposed rulemaking [ ] proposing removing the 36-month rule [i.e., identifiable event H] was published in the Federal Register (79 FR 61791). **The Treasury Department and the IRS agreed that information reporting under [Title 26] section 6050P should generally coincide with the actual discharge of a debt.** Because reporting under the 36-month rule may not reflect a discharge of indebtedness, a debtor may conclude that the debtor has taxable income even though the creditor has not discharged the debt and

> continues to pursue collection. Issuing a Form 1099-C before a debt has been discharged may also cause the IRS to initiate compliance actions [against a debtor] even though a discharge has not occurred.
>
> . . .
>
> Accordingly, these final regulations adopt the proposed regulations without change [ ], remove the 36-month rule from the list of identifiable events, and remove related provisions.

*Removal of the 36-Month Non-Payment Testing Period Rule*, 81 Fed. Reg. 78908-01 (November 10, 2016) (emphasis added).[2] This amendment applies to forms required to be filed after December 31, 2016. See 26 C.F.R. § 1.6050P-1(h) (2017).

With the removal of identifiable event "H," Cashion's reasoning no longer holds water and BBVA Compass's argument, that a Form 1099-C can be issued even though no actual discharge was contemplated, is legally incorrect under the administrative rule applicable here. More to the point, even if identifiable event "H" remained in the regulation, the instant form was issued as a result of identifiable event "G," which specifically requires actual intent by the creditor to discharge the debt. It appears that, absent a decision by the creditor to cease collection activities *and* discharge the debt, identifiable event "G" would not have occurred.

Therefore, the Court determines that BBVA Compass's filing and issuance of the Form 1099-C does not operate, as a matter of law, to extinguish Debtor's obligations under the Promissory Note. However, the Court further determines the Form 1099-C, with identifiable-event code "G," constitutes prima facie evidence of intent by BBVA Compass to waive or discharge Debtor's debt obligations under the Promissory Note. Accordingly, it is hereby ORDERED that BBVA Compass's motion (Doc. 21) is DENIED.

---

[2] Available at https://www.federalregister.gov/documents/2016/11/10/2016-27160/removal-of-the-36-month-non-payment-testing-period-rule; see also "Final rules remove 3-year nonpayment testing period for [Cancellation of Debt] reporting." by Sally P. Schreiber, J.D., available at https://www.journalofaccountancy.com/news/2016/nov/irs-cod-reporting-nonpayment-testing-period-201615512.html.