ORDERED.

**Dated:  March 31, 2021**

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

JEFFREY T. PETTY,                                           Case No.          3:19-bk-0326-JAF

      Debtor.                                              Chapter 13

_____/

JEFFREY T. PETTY,

      Plaintiff,                                            Adv. Pro. No.  3:19-ap-0060-JAF

v.

BBVA COMPASS BANK f/k/a COMPASS BANK,

      Defendant.

_____/

**<ins>FINDING OF FACTS AND CONCLUSIONS OF LAW</ins>**

      This proceeding came before the Court for trial on the Complaint to Avoid Lien and for

Declaratory Judgment, filed by Plaintiff-Debtor JEFFREY T. PETTY ("Debtor") against

Defendant-Creditor BBVA COMPASS BANK f/k/a COMPASS BANK ("BBVA Compass").

(Doc. 1).  A trial was held on January 13, 2021.  (Doc. 51).  The Court took the matter under

advisement.  The parties filed post-trial briefs.  (Docs. 52 & 53).  Based on the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions.

## **Findings of Fact**

On January 30, 2019, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code.  Debtor's Chapter 13 plan was confirmed on May 8, 2019.  On April 26, 2019, Debtor filed this adversary proceeding seeking to avoid a mortgage lien held by BBVA Compass on certain real property located in Florida (the "Property").  The complaint alleges BBVA Compass "has forgiven the debt" secured by the subject mortgage but failed to release the mortgage.

In July 2006, Debtor executed a promissory note in favor of BBVA Compass (then known as Compass Bank) in the amount of $81,000 (the "Promissory Note").  The debt was secured by the mortgage lien that is the subject of this action.  (Doc. 22 at 9).  Debtor eventually defaulted under the terms of the Promissory Note and has not made a payment since November 2012.  The mortgage and Promissory Note are governed by Florida law.

In January 2018, for tax-year 2017, BBVA Compass issued an "information return" Form 1099-C to Debtor and filed the same with the Internal Revenue Service ("IRS").  (Doc. 49-5).  This form was ostensibly issued to report that the balance remaining on the Promissory Note, roughly $74,000, was forgiven by BBVA Compass.  The "identifiable event code" listed in Box 6 of the form was marked as "G," which corresponds to 26 C.F.R. § 1.6050P-1(b)(2)(i)(G).  This event code demonstrates that BBVA Compass issued and filed the form because the following event occurred:  "A discharge of indebtedness pursuant to a decision by the creditor [ ] to discontinue collection activity *and discharge debt*."  See 26 C.F.R. § 1.6050P-1(b)(2)(i)(G) (emphasis added). In a prior order issued in this adversary proceeding, the Court explained that the form standing alone does not operate to *per se* discharge the underlying debt, as a matter of law.  (Doc. 32).

However, this form marked with event code G does constitute prima facie evidence of intent to waive the underlying debt.  (Doc. 32).[1]

The IRS requires the issuance of a Form 1099-C when a voluntary discharge of debt occurs because the forgiven balance may constitute earned income for purposes of a borrower's federal income taxes.  It just so happens that, due to the Mortgage Forgiveness Debt Relief Act, Debtor did not have to pay income tax on the $74,000 listed on the Form 1099-C.  Nevertheless, it appears that, but for the Mortgage Forgiveness Debt Relief Act, Debtor would have had to pay income tax on the $74,000.

BBVA Compass's corporate representative testified the bank ceased collection efforts on the debt because any collection effort would cost the bank more than it would recoup.  This caused the bank to "charge-off," but not completely "write-off," the debt.  This charge-off occurred in April 2013.  Importantly, BBVA Compass's "Recovery Management System Notes" specifically show that a charge-off, not a write-off, occurred in 2013.  (Doc. 49-4).

In BBVA Compass's operations, a "charge-off" occurs when the bank devalues the loan asset (i.e., the repayment obligation owed to it) to zero dollars on its own accounting books as a nonperforming asset, in accordance with generally accepted accounting principles.  BBVA Compass has standards and procedures in place governing the decision to charge-off a loan asset. The testimony indicated that any decision by BBVA Compass to devalue a loan asset on its own books was due to "regulatory guidance," though this was not fully explained.

---

[1]  At trial, Debtor's counsel stated the Court found the Form 1099-C to be "sufficient" evidence in its prior order. (Doc. 32).  Debtor implied this document standing alone was "sufficient" to *prove* his case as a question of fact. However, the document is "sufficient" to create a triable issue and move past summary judgment.  As explained herein, the document does not convince or persuade the Court that BBVA Compass actually intended to waive its right of repayment under the Promissory Note.

It remains unclear why the Form 1099-C was issued in January 2018, nearly five years after the charge-off occurred.  BBVA Compass has taken no action on this loan since the charge-off.  BBVA Compass has not accelerated payments pursuant to any acceleration clause in the Promissory Note and has not pursued a foreclosure action.  The Promissory Note matures in August 2036.  Therefore, the full balance on the Promissory Note has not yet become due.  BBVA Compass's representative testified the bank does not intend to pursue collection efforts until Debtor attempts to sell the Property.  The bank could also, in theory, pursue a foreclosure action if the value of the Property rises to the point that such an action would be economically viable to undertake.

As a question of fact, the Court finds that BBVA Compass did not intend to waive Debtor's obligation of repayment by issuing the Form 1099-C or at any other time.  This is clearly supported by the bank's Recovery Management System Notes that were created at the time of the charge-off.  (Doc. 49-4).

## Conclusions of Law

Debtor's complaint contends that BBVA Compass waived its right of repayment under the Promissory Note and, therefore, the mortgage lien should be invalidated.  Florida law treats waiver as an affirmative defense to the enforcement of a contract.  See Fla. Std. Jury Instr. (Cont. & Bus.) 416.30 (standard jury instruction on waiver of a contractual right).  This affirmative claim is appropriately raised in an adversary proceeding to avoid a mortgage lien.

Under Florida law, "waiver" is the voluntary and intentional relinquishment of a known right.  Raymond James Fin. Servs., Inc. v. Saldukas, 896 So. 2d 707, 711 (Fla. 2005); Progressive Exp. Ins. Co. v. Camillo, 80 So. 3d 394, 400 (Fla. 4th DCA 2012); Bueno v. Workman, 20 So. 3d 993, 998 (Fla. 4th DCA 2009); Winans v. Weber, 979 So. 2d 269, 274 (Fla. 2d DCA 2007).  "The

elements of waiver are:  (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right." Camillo, 80 So. 3d at 400.  Proof of the elements of waiver may be express or implied from conduct/acts that lead a party to reasonably believe the right has been waived.  Saldukas, 896 So. 2d at 711; LeNeve v. Via S. Fla., L.L.C., 908 So. 2d 530, 535 (Fla. 4th DCA 2005).

Here, implied waiver was not argued.  Nevertheless, the Court concludes BBVA Compass did not expressly or impliedly waive its right to repayment under the Promissory Note at any time. To better explain, the Court looks to the difference between a "charge-off" and "write-off." Generally, a "write-off" of a loan asset removes the loan asset from the bank's accounting ledger altogether.  When a complete write-off occurs, the bank no longer owns the asset—i.e., it no longer owns the right of repayment.  Sometimes, partial write-offs may occur when the lender settles the loan with the borrower for some amount less than the original agreement called for.  A complete write-off, under the present facts, would constitute a waiver of the obligation of repayment because the bank would have voluntarily relinquished its right of repayment.

In contrast, a mere charge-off by BBVA Compass does not constitute waiver.  A charge-off occurs when the lender devalues the loan asset on its books.  In BBVA Compass's operations, when a charge-off occurs, the bank still owns the right of repayment despite devaluing the right of repayment to zero dollars on its own accounting ledger as a nonperforming asset.

A charge-off generally constitutes a loss to BBVA Compass for accounting purposes and can offer income tax benefits by reducing the bank's taxable income for that tax-year.  Thus, BBVA Compass has a business interest in charging-off the loan asset.  There is no evidentiary basis to find that BBVA Compass would be prevented from *re*valuing the loan asset on its books if it was able to recoup funds owed on the Promissory Note at a later date.  In theory, the revaluation

would constitute earned income and the bank would be forced to repay any ostensible income tax benefits from the charge-off.  It is completely reasonable for the bank to keep the loan on its books as a nonperforming asset until a future date when foreclosure or other efforts might become cost-effective.

Having said that, it certainly appears that issuing the Form 1099-C was unnecessary and should not have occurred because the bank did not actually discharge the debt owed.  The Court analyzed this issue in its prior order denying summary judgment.  (Doc. 32).  In any event, the testimony and particularly the documentary evidence convince the Court there was no intent to waive Debtor's repayment obligation.  The documentary evidence shows that, at all material times, the bank owned the loan (the right of repayment) as an asset on its books.  Therefore, Debtor's theory to avoid the mortgage lien cannot prevail.

Finally, the Court requested the parties brief the current status of Florida law governing the statute of limitations on enforcement of a mortgage debt.  Both sides agree the limitations period on enforcing the Promissory Note has not run.  (Docs. 52 & 53).  That is, in Florida, a cause of action on a note secured by a mortgage accrues when the full balance first becomes due—i.e., at loan maturity or when the lender accelerates payments pursuant to an express acceleration clause.  See Bollettieri Resort Villas Condo. Ass'n, Inc. v. Bank of New York Mellon, 228 So. 3d 72, 74-75 (Fla. 2017) (Lawson, J., concurring specially) (citing Greene v. Bursey, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999)).  Florida's limitations period to foreclose a mortgagor's right of redemption expires five years from the date of accrual of the cause of action.  § 95.11(2)(c), Fla. Stat. (2006).  Here, BBVA Compass has not accelerated payments, and the Promissory Note does not mature until August 2036.  Thus, any potential foreclosure action has not accrued, and the five-year limitations period has not begun to run.

Conclusion

BBVA Compass did not waive its right to repayment under the Promissory Note when it issued a 1099-C after it charged-off Debtor's mortgage debt.  The Court will enter a separate judgment on Debtor's complaint, consistent with these Findings of Fact and Conclusions of Law.